Jacque M. Ramos, jramos@jramoslawfirm.com, #10720
**J. RAMOS LAW FIRM P.L.L.C.**
252 South 1300 East, Suite A
Salt Lake City, Utah 84102
Telephone:  (801) 305-4180
Facsimile:   (801) 582-0834

*Attorney for Plaintiff, Michael Malohifo'ou*

**IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| MICHAEL MALOHIFO'OU,<br><br>        Plaintiff,<br><br>   v.<br><br>IHC HEALTH SERVICES, INC. D.B.A. INTERMOUNTAIN HOLLADAY CLINIC AND INTERMOUNTAIN HEALTHCARE; and INTERMOUNTAIN HEALTHCARE.<br><br>        Defendants. | **COMPLAINT**<br><br>**(Jury Demand)**<br><br>Case No.: _____<br><br>Magistrate Judge _____ |

Plaintiff, Michael Malohifo'ou, by and through his counsel of record, hereby submits this Complaint against Defendant Intermountain Healthcare, and for causes of action, alleges as follows:

**NATURE OF THE CASE**

This is an action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., as amended, Title I of the Civil Rights Acts of 1991, 42 U.S.C. § 1981a, and the Utah Anti-discrimination Act of 1965 ("UADA") against IHC Health Services, Inc. d.b.a. Intermountain Healthcare and Intermountain Holladay Clinic (collectively "Intermountain Healthcare"), to

1

correct unlawful employment practices on the basis of race, national origin, and sexual orientation, hostile work environment, retaliation, and wrongful termination and to provide relief to Michael Malohifo'ou who was adversely affected by the unlawful practices.  Mr. Malohifo'ou alleges that he was subjected to unwelcome discrimination and harassment based on race, national origin, and sexual orientation including but not limited to racial slurs and other comments by Defendant's managers, directors, physicians, and employees, which created a hostile work environment because of his race—Tongan and his sexual orientation.  Mr. Malohifo'ou further alleges that Defendant Intermountain Healthcare had actual or constructive notice of the discrimination, harassment, and hostile work environment, and failed to adequately and appropriately respond.  Mr. Malohifo'ou also alleges that Defendant Intermountain Healthcare retaliated against him for opposing and/or complaining about the racial discrimination and harassment that lead to his wrongful termination.

## PARTIES

1. Plaintiff Michael Malohifo'ou hereby incorporates as though fully restated each of the factual allegations set forth in the preceding paragraphs of the Complaint.

2. Mr. Malohifo'ou is a resident of the State of Utah, Salt Lake County.  At all times relevant to the Complaint, Mr. Malohifo'ou was employed by IHC Health Services, Inc. d.b.a. Intermountain Healthcare and Intermountain Holladay Clinic located at 6272 South Highland Drive, Salt Lake City, UT 84121.

3. Defendant IHC Health Services, Inc. d.b.a. Intermountain Holladay Clinic and Intermountain Healthcare is Utah Corporation based in Salt Lake City, Utah, with its corporate address is 36 South State Street, Suite 2200, Salt Lake City, UT 84111.

## JURISDICTION & VENUE

4. Plaintiff Michael Malohifo'ou hereby incorporates as though fully restated each of the factual allegations set forth in the preceding paragraphs of the Complaint.

5. Plaintiff has exhausted administrative remedies, having filed a charge of discrimination and retaliation with the Utah Labor Commission and Equal Employment Opportunity Commission and requested a right to sue letter from the EEOC and the U.S. Department of Justice, dated April 25, 2017, which was received by Mr. Malohifo'ou on April 29, 2017.

6. This Court has jurisdiction pursuant to the provisions of 28 U.S.C. §§ 1331, 1343; Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-5(f)("Title VII"), the Civil Rights Act of 1991, 42 U.S.C. § 1981a ("Section 1981) and the UADA from claims arising from the actions of Defendant.

7. The employment practices alleged to be unlawful were committed in Salt Lake County, State of Utah, which is within the jurisdiction of the U.S. District Court for the District of Utah, Central Division.  Accordingly, venue is proper pursuant to 28 U.S.C. § 1391.

8. At all times relevant to this Complaint, Plaintiff was an "employee" within the meaning of Title VII, 42 U.S.C. § 2000e(f).

9. At all times relevant to this Complaint, Defendant Intermountain Healthcare was an "employer" within the meaning of Title VII, 42 U.S.C. § 2000e(b) and engaged in healthcare services and other related services or industries, affecting interstate commerce pursuant to the applicable provisions of Title VII, Section 1981, and the UADA.

10. At all times relevant hereto, Intermountain Healthcare employed more than fifteen (15) employees in the State of Utah.

**FACTUAL ALLEGATIONS**

11. Plaintiff Michael Malohifo'ou hereby incorporates as though fully restated each of the factual allegations set forth in the preceding paragraphs of the Complaint.

12. Mr. Malohifo'ou, is a gay male from Tonga that was diagnosed with Post-Traumatic Stress Disorder ("PTSD") prior to employment with Intermountain Healthcare.

13. In approximately 2008, Mr. Malohifo'ou was hired by Intermountain Healthcare and at or around this time notified Intermountain Healthcare of his PTSD diagnosis and disability.

14. Intermountain Healthcare's employee Stephanie Peterson was Mr. Malohifo'ou's direct supervisor who controlled and dictated the means and manner of Mr. Malohifo'ou's work duties and job performance.

15. In or about April 2014, Ms. Peterson performed and completed Mr. Malohifo'ou's employee review providing him the highest achievement as an "extraordinary contributor."

16. In May 2014, Intermountain Healthcare hired Plaintiff as a Practice Manager over InstaCare.

17. On or about October 25, 2014, Mr. Malohifo'ou reported policy violations regarding certain medications stores in the fridge by internal medicine doctors, including Dr. Dale Rutledge.

18. In and around January 2015, Mr. Malohifo'ou received a promotion to Practice Manager II assuming additional responsibilities for a complex operational practice over InstaCare, Podiatry, Laboratory, and X-Ray services.

19. In April 2015, Mr. Malohifo'ou was also given the responsibility of managing the internal medicine clinic and signed a "clinic compact."

20. On or about April 20, 2015, Intermountain Healthcare d.b.a. Intermountain Medical Group completed Mr. Malohifo'ou's employee review where it again was documented he has a "extraordinary contributor."

21. The April 2014 and April 2015 employee reviews were conducted by Kim Peterson, Practice Manager and Mr. Malohifo'ou's supervisor at Intermountain Healthcare.

22. Beginning in or around April/May 2015, Mr. Malohifo'ou began to be subjected to harassment based on his sexual orientation, racial discrimination, and national origin and was ultimately retaliated against and subject to a hostile work environment because of his complaints of harassment and discrimination based on his race, national origin, and sexual orientation.

23. In April 2014, Mr. Malohifo'ou became the subject of harassment and discrimination from and internal medicine physician, Dr. Dale Rutledge.

24. On April 24, 2015, during an achievements party, Dr. Dale Rutledge made comments in a racist manner and with racist intent to Mr. Malohifo'ou that "people from [his] nation were only good at physical labor, not higher thought."

25. On April 30, 2015, Mr. Malohifo'ou discussed with Dr. Dale Rutledge certain actions that were against the "clinic compact" and Intermountain Healthcare's policies. These included, but not limited to, including discriminatory and harassing statements about his race and sexual orientation, Dr. Rtuledge failing to notify Mr. Malohifo'ou when he was to be out of the clinic due to illness, and other policy violations.

26. Dr. Rutledge responded to Mr. Malohifo'ou's request in racist manner and with racist intent by stating that "[Mr. Malohifo'ou" better not be reporting him to HR, because someone like [Mr. Malohifo'ou] wouldn't be allowed to mess with his career."

27. On or about May 10, 2015, Mr. Malohifo'ou officially complained about Dr. Rutledge obfuscating his duties, his discriminatory and harassing practices and actions against Mr. Malohifo'ou, and the questionable validity of documentation presented by Dr. Rutledge to the Assistant Regional Operations Director, Dave Henriksen, among others.

28. In and around May 2015, Mr. Malohifo'ou also made a complaint to Intermountain Healthcare's Compliance department outlining the problems he was enduring with discriminatory and harassing ongoing remarks about his race, and national origin, among other concerns that were in violation of the contractual "clinic compact," Intermountain Healthcare policies, Utah, and Federal law.

29. In response, Intermountain Healthcare's employees and agents, including Dr. Rutledge, Dave Henriksen, and Tim Johnson, M.D. verbally accosted and warned Mr. Malohifo'ou for being "aggressive" and "communicating improperly."

30. Between July 8, 2015 and August 2, 2015, Kim Peterson, Mr. Malohifo'ou's direct manager and supervisor, and Dave Henriksen held a meeting with Mr. Malohifo'ou where they instructed Mr. Malohifo'ou to be "nicer" with his approach because he was "perceived as being aggressive and intimidating." Ms. Peterson also instructed Mr. Malohifo'ou to never make a report to HR.

31. Dr. Rutledge continued to make discriminatory and harassing remarks to and about Mr. Malohifo'ou's race, ethnicity, and national origin in front other employees and staff that were communicated to Ms. Peterson and/or Dave Henriksen by Mr. Malohifo'ou.

32. On September 2, 2015, Ms. Peterson held a meeting with Mr. Malohifo'ou, Leanne Belliston with Intermountain Healthcare Human Resources, and Dave Henriksen

allegedly for Mr. Malohifo'ou's "ongoing concerns related to Mike's poor communication, strained relationships with staff and providers, and professionalism."

33. However, during the September 2, 2015, meeting Mr. Malohifo'ou was again openly harassed and discriminated against by Dr. Rutledge. When Mr. Malohifo'ou attempted to speak on his behalf he was repeatedly silenced by Ms. Belliston and Mr. Henriksen.

34. Additionally, Mr. Malohifo'ou was also instructed he was not allowed to talk to Dr. Rutledge unless Ms. Peterson or Mr. Henriksen was present.

35. On September 21, 2015, Mr. Malohifo'ou was called into a meeting with Ms. Peterson and Dave Henriksen where they now alleged he was not fulfilling his duties and was failing to communicate with Dr. Rutledge. They also alleged that Mr. Malohifo'ou was being "aggressive." Despite these allegations, Ms. Peterson and Mr. Henriksen could not cite any specific incidences of Mr. Malohifo'ou's alleged "aggressive" behavior or lack of performance of his duties.

36. During the September 21, 2015, Mr. Malohifo'ou again addressed being accosted and discriminated against by Dr. Rutledge. At that time, Mr. Henriksen told Mr. Malohifo'ou that he should not bring up the issue of his harassment and discrimination again because it would impact his job with Intermountain Healthcare. Mr. Malohifo'ou again stated that he believed such action was in retaliation of his previous complaints to which Mr. Henriksen responded, "this is not retaliation, you need to fix yourself."

37. In fear of losing his job, Mr. Malohifo'ou reluctantly agreed to work on his alleged issues presented in the September 21, 2015 meeting.

38. On September 30, 2015 a "Documented Verbal Warning" was issued to Mr. Malohifo'ou signed by Ms. Peterson and Leanne Belliston.

39. The same day, Mr. Malohifo'ou filed his response stating that the "Documented Verbal Warning" was made in retaliation to his reports of Dr. Rutledge's harassing and discriminatory remarks regarding his race, national origin, and sexual orientation.

40. During this time, Mr. Malohifo'ou also applied for another clinic research position in which the hiring supervisor, Patti Spencer, indicated they were interested in moving forward with hiring him, but was awaiting a referral from his current manager, Ms. Peterson.

41. Mr. Malohifo'ou spoke to Ms. Peterson about his application and the need for referral for the applied clinic research position.  Ms. Peterson responded in a racist manner with racist intent by telling Mr. Malohifo'ou that someone like him wouldn't be allowed to have a superior position to Ms. Peterson and Mr. Henriksen and that he had to "follow the rules."

42. After reviewing the retaliatory Corrective Action Form of the September 30, 2015 "Documented Verbal Warning," Mr. Malohifo'ou was told he was no longer a candidate for the clinical research position and was instructed to not apply again.

43. At some time between October 19, 2015 and October 28, 2015—almost five months after the May 2015 report of discrimination and harassment and almost a month after Mr. Malohifo'ou's appeal to the September 30, 2015 corrective action, Mr. Malohifo'ou finally met with the Regional Operations Director, Darren Johnson, and Ned Chamberlain, Human Resources Consultant for Intermountain Healthcare.

44. On October 23, 2015, Mr. Johnson issued a letter to Mr. Malohifo'ou upholding the September 30, 2015 corrective action without any mention or reference of Mr. Malohifo'ou's formal complaints or discrimination and harassment based on his race,

national origin, and sexual orientation. The October 23, 2015 letter was never provided to Mr. Malohifo'ou until December 3, 2015.

45. Unfortunately, the increasingly hard sanctions, hostility from Ms. Peterson, Dave Henriksen, and Dr. Rutledge did not subside. In addition to the ongoing retaliation, harassment, and discrimination, Mr. Malohifo'ou was also improperly forced to utilize "PTO" in lieu of being paid for hours worked despite being an "exempt" employee and was denied compensation for additional duties and requirements imposed by the corrective action plan against him.

46. When Mr. Malohifo'ou questioned Ms. Peterson about his compensation, she stated, "we all sacrifice for our careers, and you don't get paid overtime or additional amounts for meeting the requirements of an action plan."

47. On November 20, 2015, Mr. Malohifo'ou filed a compliance complaint regarding his compensation.

48. On November 23, 2015, Mr. Malohifo'ou met with Stephanie McEwen to discuss his compliance complaint. Mr. Malohifo'ou was asked whether he believed the actions forming the bases of the compliance complaint were racially motivated to which he responded yes. Ms. McEwen did not ask any further questions regarding the alleged discrimination.

49. That same day or the following, Mr. Malohifo'ou received an absolute dismissal of his compliance complaints without discussion of his discrimination and retaliation complaints.

50. Rather, on November 24, 2015, Ms. Peterson called Mr. Malohifo'ou into her office for a discussion with Ms. McEwen. At that time they presented Mr. Malohifo'ou with a

"Written Warning" alleging his failure to obtain proper approval on two meeting agenda items.  Mr. Malohifo'ou vehemently disagreed with the violations and presented arguments and evidence that questioned the truthfulness of his alleged violative actions. Ms. McEwen stated to Mr. Malohifo'ou that pointing out the flaws in the corrective action "doesn't matter."

51. That same day, Mr. Malohifo'ou filed an appeal to the Corrective Action Form "Written Warning."

52.  On December 2, 2015, Mr. Malohifo'ou was indefinitely suspended without pay due to an "ongoing investigation" and was told that if Mr. Malohifo'ou sought legal representation his suspension and loss of pay would be extended further.

53. Due to the tremendous stress and hostile environment, Mr. Malohifo'ou had rapidly lost twenty-five (25) pounds of weight and was suffering mental anguish.

54. On December 9, 2015, Mr. Malohifo'ou visited his physician, who out of concern for both his physical and mental health resulting from traumatic induces stress due to the workplace, prescribed counseling services and therapy for Mr. Malohifo'ou from December 9, 2015 to January 9, 2015 in accordance with FMLA protections.

55. On December 9, 2015, Mr. Malohifo'ou applied for FMLA.

56. By December 10, 2015, Ms. Malohifo'ou still had not received any documents or other information from Ms. Peterson about his suspension without pay.

57. On December 11, 2015, Ms. McEwen telephoned Mr. Malohifo'ou and instructed him to come into the office to meet with her and Ms. Peterson.  Mr. Malohifo'ou stated he had applied for FMLA and preferred a teleconference call that was scheduled for Tuesday, December 15, 2015.

58. On December 12, 2015, Ms. Malohifo'ou received a text from Ms. Peterson stating he was not permitted to attend to the annual Christmas party. This was the second year in a row Mr. Malohifo'ou was asked not to attend because his family doesn't "fit in."

59. On December 15, 2015, Mr. Malohifo'ou teleconferenced with Ms. McEwen and Ms. Peterson who instructed Mr. Malohifo'ou to not record the call and the conversation was not to be transcribed. Mr. Malohifo'ou again indicated that he had submitted his paperwork for FMLA leave. Ms. McEwen stated that should his FMLA request be denied he would be terminated.

60. Sometime between December 15, 2015 and March 4, 2016, Intermountain Healthcare issued a ban of Mr. Malohifo'ou from entering the premises that prevented Mr. Malohifo'ou from gathering his personal items and seeking medical treatment and records for his son in the pediatric department.

61. Prior to the ending of Mr. Malohifo'ou's approved FMLA leave, Ms. McEwen telephoned Mr. Malohifo'ou and stated that he was required to meet with her and Ms. Peterson prior to him returning to work or "doing anything additional with Intermountain Healthcare."

62. Additionally, Intermountain Healthcare employees and/or staff instructed Select Health, Mr. Malohifo'ou's healthcare provider, to terminate his benefits effective February 29, 2016.

63. On March 4, 2016, Mr. Malohifo'ou was constructively terminated due to the ongoing discrimination, harassment, retaliation, and hostile work environment in order to lessen further impact on his physical and mental health.

**FIRST CLAIM FOR RELIEF**
**Race Discrimination in violation of Title VII, Section 1981, and UADA**

64. Plaintiff Michael Malohifo'ou hereby incorporates as though fully restated each of the factual allegations set forth in the preceding paragraphs of the Complaint.

65. Based on the above allegations, Mr. Malohifo'ou alleges he suffered discrimination based on his race and national origin, Tongan, in that:

   a. Mr. Malohifo'ou is a member of a protected class, race, national origin-Tongan;

   b. Since at least May 2015, Defendant and its employees and physicians have engaged in unlawful employment practices at its Holladay Clinic, including racial harassment of Mr. Malohifo'ou because of his race and national origin. These practices include:

      i. Comments of a racial nature made to, or about, Mr. Malohifo'ou being Tongan or having the stereotypical physical and mental attributes of Tongans, on a regular basis by supervisors, physicians, and/or other employees.

      ii. Comments of a racial nature made to, or about, Mr. Malohifo'ou on a regular basis by supervisors, physicians, or other employees, including repeated use of racial slurs;

      iii. Comments of a racial nature made to, or about, Mr. Malohifo'ou on a regular basis by supervisors, physicians, or other employees, including repeated use of racial epithets;

      iv. Comments of a racial nature made to, or about, Mr. Malohifo'ou on a regular basis by supervisors, physicians, or other employees, including repeated use if racial jokes.

12

66. Defendant's conduct as alleged at length herein constitutes discrimination based on race and national origin in violation of Title VII, Section 1981, and the UADA. The stated reasons for the Defendant's conduct were not the true reasons, but instead were pretext to Defendant's discriminatory animus.

67. The effect of the practices complained of in paragraphs 1 – 66 above has been to deprive Mr. Malohifo'ou equal employment opportunities and otherwise adversely affect his status as an employee because of his race or national origin.

68. Defendants' actions and failures to act have directly and proximately caused Plaintiff substantial past and future economic loss, including lost wages, damage to his career, humiliation and pain and suffering, in an amount to be determined at trial.

69. The unlawful employment practices complained herein were intentional and were done with malice and with a knowing, callous, and reckless indifference to the state and federal-protected rights of Plaintiff for which Plaintiff is entitled to an award of punitive damages to be proven at trial, pursuant to 42 U.S.C. § 1981 and other applicable law.

**SECOND CLAIM FOR RELIEF**
**Hostile Work Environment, Discrimination, and Harassment in violation of Title VII, Section 1981, and UADA**

70. Plaintiff Michael Malohifo'ou hereby incorporates as though fully restated each of the factual allegations set forth in the preceding paragraphs of the Complaint.

71. Based on the above allegations, Mr. Malohifo'ou alleges he suffered harassment and hostile work environment based on race, national origin, and sexual orientation in that:
    a. Mr. Malohifo'ou is a member of a protected class, race, national origin-Tongan and gay.

    b. Mr. Malohifo'ou was subjected to unwelcome and unwanted conduct and the conduct complained of was based on race and his sexual orientation; and

    c. The harassment complained of was sufficiently severe and/or pervasive as to alter the terms and conditions of his employment, creating a hostile work environment.

72. The effect of the practices complained of in paragraphs 1 – 71 above has been to create a hostile work environment and had an adverse impact on Plaintiff's health and pay.

73. Defendant knew or should have known about the racially hostile work environment and failed to respond in an appropriate manner.

74. Plaintiff has suffered damages, including lost compensation, benefits, and emotional harm.

75. The unlawful employment practices complained herein were intentional and were done with malice and with a knowing, callous, and reckless indifference to the state and federal-protected rights of Plaintiff for which Plaintiff is entitled to an award of punitive damages to be proven at trial, pursuant to Title VII, Section 1981, UADA, and other applicable law.

### THIRD CLAIM FOR RELIEF
### Retaliation in Violation of Title VII and UADA

76. Plaintiff Michael Malohifo'ou hereby incorporates as though fully restated each of the factual allegations set forth in the preceding paragraphs of the Complaint.

77. Based upon the allegations, Mr. Malohifo'ou was subjected to retaliation, in that:

    a. Mr. Malohifo'ou engaged in protected opposition to discrimination and harassment.

    b. Mr. Malohifo'ou was subject to an adverse employment action subsequent to or contemporaneous with the protected activity; and

    c. There is a casual connection between the protected activity of complaining about race discrimination and the adverse employment actions when Mr. Malohifo'ou was wrongfully terminated by Intermountain Healthcare.

78. The effect of the practices complained of in paragraphs 1 – 75 constitutes retaliation and has adversely affected Mr. Malohifo'ou's status as an Intermountain Healthcare employee.

79. The stated reasons for the Defendant's conduct were not the true reasons, but instead were pretext to Defendant's retaliatory animus.

80. The unlawful employment practices complained herein were intentional and were done with malice and with a knowing, callous, and reckless indifference to the state and federal-protected rights of Plaintiff for which Plaintiff is entitled to an award of punitive damages to be proven at trial, pursuant to Title VII, UADA, and other applicable law.

### FOURTH CLAIM FOR RELIEF
### Wrongful Termination/Constructive Discharge

81. Mr. Malohifo'ou hereby incorporates as though restated each of the factual allegations set forth in the preceding paragraphs of the Complaint.

82. Title VII's and §1981's prohibitions of an employer to discriminate against employees on the basis of race, color, and religion are clear and substantial public policies supporting a claim for constructive discharge.

83. As set forth herein, during Plaintiff's employment with Intermountain Healthcare, Plaintiff was subjected to a severe pattern of discrimination and spiteful misconduct in the workplace based, in whole or in part, on his race, color, and sexual orientation.

84. Defendants' actions towards Plaintiff as set forth above are evidence of a pattern of race, color, and/or sexual orientation discrimination.

85. Defendants' pervasive and ongoing racial and discriminatory actions and/or failures to act caused intolerable working conditions for a reasonable person like Plaintiff that resulted in a constructive discharge of Plaintiff through Plaintiff's involuntary and/or coerced resignation in March 2016.

86. Defendants' conduct and the intolerable working conditions was a direct and proximate cause of Plaintiff's constructive discharge.

87. Defendants' constructive discharge of Plaintiff, as set forth herein, caused injuries, damages, and harm to Plaintiff, including but limited to, past and future economic loss and other benefits in an amount to be proven at trial.

## FIFTH CLAIM FOR RELIEF
### (Intentional Infliction of Emotional Distress)

88. Mr. Malohifo'ou hereby incorporates as though restated each of the factual allegations set forth in the preceding paragraphs of the Complaint.

89. In subjecting Mr. Malohifo'ou to ongoing hostile work environment and retaliation arising from his complaints of harassment and discrimination, Defendant Intermountain Healthcare intentionally and recklessly engaged in intolerable and outrageous conduct that caused Ms. Malohifo'ou severe emotional distress and an exacerbation of his PTSD.

90. Any reasonable person would have known that taking such action would cause severe emotional distress and an exacerbation of his known disability of PTSD.

91. As a result of such outrageous conduct, Mr. Malohifo'ou has suffered and continues to suffer emotional distress.

92. The conduct of Intermountain Healthcare was willful and malicious and manifested a knowing and reckless indifference toward, and disregard of, Mr. Malohifo'ou's interests and rights.

93. As a direct and proximate result of the intentional infliction of emption distress, Mr. Malohifo'ou has suffered damages and is entitled to recover damages in an amount to be proved at trial, together with punitive damages, expenses and attorney's fees, and such other relief as may be available under the law, as established by proof at trial.

### SIXTH CLAIM FOR RELIEF
**Request for Attorney's Fees, Costs, and Plaintiff's Expenses**

94. Mr. Malohifo'ou hereby incorporates as though restated each of the factual allegations set forth in the preceding paragraphs of the Complaint.

95. Mr. Malohifo'ou has been required to retain counsel and therefore is entitled to reasonable attorney's fees, costs, and out-of-pocket expenses pursuant to Title VII, Section 1981, UADA, and other applicable laws cited herein.

### JURY DEMAND

Mr. Malohifo'ou hereby requests a trial by jury on all claims and causes of action so triable under Fed. R. Civ. P. 38.

### PRAYER FOR RELIEF

**WHEREFORE**, Mr. Malohifo'ou prays for judgment and relief as follows:

1. In favor of Mr. Malohifo'ou and against Defendants for all causes of action asserted herein;

2. For all wages, compensation, and other economic benefits lost as result of Defendants' actions and omissions, including back pay and benefits;

3. For all special and general damages available to Plaintiff, including front pay and benefits, future pecuniary loss, severe emotion distress, medical expenses, pain and suffering, inconvenience, compensatory damages, and other non-pecuniary losses;

4. All damages associated with Plaintiff's medical and psychological harms in amounts to be proven at trial;

5. For an award of attorney's fees, costs, and out-of-pocket expenses as allowed by the foregoing claims;

6. For an award of punitive damages;

7. For prejudgment interest and post-judgment interest as allowed by law;

8. A positive letter of reference and positive employment reference in Plaintiff's personnel file;

9. An order requiring Defendant Intermountain Healthcare to conduct ongoing Title VII and UADA training with all its executives, officers, management, supervisors, and employees, to promote an employment atmosphere free from discrimination, hostility, and retaliation, and submit proof thereof to the Equal Employment Opportunity Commission and the Utah Antidiscrimination & Labor Division of the Utah Labor Commission for a period of two (2) years; and

10. For such additional and other relief as the court deems just and equitable.

DATED this 26th day of July, 2017.

J. RAMOS LAW FIRM P.L.L.C.

/s/ Jacque M. Ramos
_____
Jacque M. Ramos
Attorney for Plaintiff Michael Malohifo'ou